## Blish Milling Company v. Detherage.

(Decided October 16, 1913).

### Appeal from Knox Circuit Court.

1.  Vendor and Purchaser—Action by Vendor for Damages for Breach of Contract—Pleading.—In an action by the vendor to recover

damages for the breach of a contract by which the vendee agreed to buy personal property at a future day at a given price, the vendor must allege that he tendered or offered to deliver the property to the vendee.

2. Vendor and Purchaser—Action by Vendor for Breach of Contract—Election.—Such a contract providing that the vendor, if the vendee did not take the property, might at his election, hold the property at the cost of the vendee, the vendor to recover such cost, must aver that he made the election at the time the defendant failed to take the property. An election to do so at a later date is invalid to charge the vendee.

W. R. LAY for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

The Blish Milling Company, a corporation brought this suit against W. H. Detherage. It alleged in its petition that on July 18, 1910, it agreed with the defendant to sell and deliver to him in Barboursville, Kentucky, 210 barrels of flour in cotton sacks at the rate of $5.60 per barrel, the defendant to receive credit for the freight which he would be required to pay from the mill of the plaintiff at Seymour, Indiana, to Barboursville, Kentucky; that the defendant agreed to buy from the plaintiff the flour on these terms, and further agreed that the plaintiff should ship the flour to him to such places or persons as he might designate during the months of August and September, 1910, or at any time within the maximum limit of seventy-five days from July 18, 1910; that a similar contract was entered into between the plaintiff and defendant on August 15, 1910, the shipment to be made within sixty days at the defendant's option; that on September 16, 1910, another and similar contract was made, except that the price per barrel was $5, and the shipment was to be made during the month of October, 1910, with the maximum limit of 45 days from September 16, 1910; that it was further agreed between the parties in each of these contracts that should the defendant fail to direct shipment of the flour within the maximum limit then the option was given to the plaintiff of reselling the flour on the defendant's account, and charging him the difference between the contract price and the market price; or it had the option to carry the flour, charging him at ten cents a month

for each barrel of flour; that the defendant failed to call for the shipment of any of the flour, and the plaintiff, on January 1, 1911, exercised its option to carry the flour, and so notified defendant; that it continued to carry it until August 5, 1911, and the defendant so became indebted to it 80 cents for each barrel of flour, or a total of $504; that on August 5, the plaintiff sold the flour for defendant's account and charged him with the difference between the contract price and the market price with the result that an average loss of 93 cents a barrel was sustained, amounting to $585.90; that the sale was made pursuant to written notice served on the defendant; and that he had failed and refused to pay any part of the above sums for which judgment was prayed. The defendant filed a demurrer to the petition, and the circuit court sustained the demurrer. The plaintiff filed an amended petition in which it was alleged that the first lot of flour was sold to plaintiff under the following contract:

"Bliss Milling Company, Seymour, Indiana.

Broker, A. C. Vaughn                     July 18 ,1910.

Sold to W. H. Detherage,    Barbourville, Kentucky.

Quantity-packages,    Brand    Price    C. A. F.

210 barrels    Copyright    $5.60 cotton B. ville.

"Payment—draft against bill of lading at arrival of flour.

"Shipment—August, September with maximum limit at buyer's option of 75 days at the end of which time the seller shall have any and all the following privileges: .

"A.    Canceling contract or any unshipped portion thereof.

"B.    Making shipment in the recognized. standard packages of buyers market, or resell goods for buyers account or of detailed goods charging buyer with difference between contract and market price.

"C.    Continuing the life of the contract at carrying charges payable in advance of 10c per barrel flour for each month or fractional part thereof.

"Failure of seller to ship on specifications within fourteen days from receipt of shipping instructions, unless prevented by conditions unavoidable and beyond control, shall entitle the buyer to any or all of the following privileges:

"A.    Cancel contract.

"B.    Buying in open, market similar quantity and quality of flour for sellers account.

"C. Continue life of contract at a credit of 10c per barrel flour for each month after the 14 days period aforesaid. Price C. A. F. (cost and freight) to destination agreed upon, which means all deliveries on the contract or at mill with freight to be allowed to shipping point.

"If for any reason the flour has to be sold on the open market the buyer is to be charged with the loss, or credited with the profit."

It was also alleged that the other two lots of flour were sold under like contracts; that the defendant did not during any of the maximum period of the contract direct the plaintiff when to ship to him the flour or any part of it, and that at the expiration of each of the maximum limits, the plaintiff began holding the flour at the rate of ten cents per month per barrel subject to the contract, and so held it until there had accumulated the sum of $504, charges against the defendant; that thereupon plaintiff exercised the remaining option of selling the flour in open market and charging the defendant with the difference in the selling price and the contract price, and that when the flour was sold at the market price, it lacked the sum of $585.90 of bringing the contract price; that the plaintiff was ready, willing and able at any and all times to comply with its contract, but that the defendant failed and refused to carry out his part of the contract, and thereby broke same, by reason of which he was indebted to it in the sum of $1,089.90, no part of which had been paid, and for which the plaintiff prayed judgment. The defendant demurred to the petition as amended; the circuit court sustained the demurrer, and the plaintiff declining to plead further, dismissed the action. The plaintiff appeals.

The demurrer to the original petition was properly sustained. The allegations of the petition do not show a sale of the flour. They only show an agreement to sell flour at a future day, and an agreement by the defendant to buy it at a future day at a certain price. The petition does not show that the plaintiff at any time tendered the flour to the defendant or offered to ship it to him. In order to make out a cause of action for the breach of an agreement to buy personal property, the plaintiff must show a tender or offer to ship the property to the defendant. (Bishop on Contracts, section 1440, Newman on Pleadings, sections 302b, 343, Dryden v. Lewis, 5 Dana, 138, Chandler v. Robertson, 9 Dana, 291.)

For all that appears in the petition, the plaintiff may have had no flour to deliver to defendant on the dates when it should have been delivered. The remedy for the breach of a contract to buy property at a future day is an action for the damages sustained, and no damages can be recovered where the plaintiff does not offer to perform and demand performance by the defendant. Where neither of the parties offers to perform, and neither demands performance by the other, the contract may be regarded as waived by both of them.

The amended petition is defective for the same reason as the original petition. The contract set out in it not being alleged to be in writing must be presumed to be oral; and so the amended petition simply sets out more in detail the contract alleged in the original petition, which was a contract to buy the flour at a future day at a given price. The plaintiff's only remedy is a recovery of damages for the breach of the contract and to recover such damages, the plaintiff must show an offer to perform its part of the contract. (Sousely v. Burns' Admr., 10 Bush, 87.)

According to the allegations of the petition, the maximum limit of the defendant's options all expired before December 1, 1910, and the plaintiff exercised no option until January 1, 1911. It was incumbent on it to offer to perform the contract within the time for performance, and it could not wait until long afterwards, when the value of flour had gone down, and then for the first time, elect to treat the defendant as the purchaser of the flour, and carry it at his cost.

Judgment affirmed.