## Simpson v. Blaine, et al.

(Decided May 13, 1921.)

### Appeal from Grant Circuit Court.

1. Bills and Notes—Consideration.—Where the seller of property to a newly organized corporation accepts the note of one of the sub-scribers to the stock as part payment on the cash payment recited in his conveyance, there was a valuable consideration for the ex-ecution of the note.

2. Corporations—Fraud or Deceit.—Where one is an incorporator and signs the articles of incorporation and participates in the pre-liminary organization of the corporation, knowing the same is or-ganized primarily for the purpose of buying a certain property at a fixed price,· and knowing as much or more about the value of the property than does the seller, there is no fraud or deceit practiced upon him by the seller.

3. Evidence—Parol Evidence of Contemporaneous Declarations.— Parol evidence of contemporaneous declarations and agreements is not admissible to contradict the terms of a writing which con-tains an unqualified promise to pay, unless the writing shows on its face that it is only a part of the contract between the parties.

C. C. ADAMS and D. L. PENDLETON·for appellant.

DEJARNETTE & HARRISON and HOGAN & DICKERSON for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

In the spring of 1915 there was much interest in the development of certain mineral springs in and around Dry Ridge in Grant county. There had previously been found in that locality valuable mineral water which had some considerable reputation for its curative properties.

The appellant then owned in the town a place of about 6½ or 7 acres upon which there were a good-sized dwell-ing and necessary outbuildings. Prior to that time he ·had caused to be drilled on the place ·a well something over 1100 feet deep wherein mineral water was found. He had the water analyzed, and being assured that it was ·of practically the same nature as the other mineral water in the vicinity, he made arrangements to and did acquire certain equipment necessary to enable him to bottle and ship the water and otherwise use it for commercial pur-poses. In drilling the well and acquiring the necessary equipment, he expended about three thousand dollars.

He managed to establish the business in a small way by the shipment of water and the taking in of boarders at his home who were seeking the benefit of the water.

A number of his local friends became interested in the matter, and it was finally proposed that a corporation be organized for the purpose of taking over his property and developing the business, and for the erection and operation of a sanatorium or hospital thereon. Among others so interested was the appellee, Dr. A. D. Blaine, a physician of Dry Ridge, who presumably had a knowledge of the water and of its analysis and the value of its curative properties; at any rate, he is shown to have had patients who used the water and to have himself often visited the well and used the water therefrom.

Accordingly subscription papers were circulated and there was finally subscribed $13,500 to the capital stock of a proposed corporation of $25,000 capital stock. Among others so subscribing was the appellee, A. D. Blaine, who subscribed for $500 of the stock. Thereafter, in June, 1915, the Dry Ridge Sanatorium and Hotel Co. with a capital stock of $25,000, was incorporated, the appellee, A. D. Blaine, being one of the incorporators; and it was recited in the articles of incorporation that $13,500 of such capital stock had been subscribed. On the 25th of June, 1915, there was a meeting of the stockholders at Dry Ridge for the purpose of organizing the corporation, and the appellee, A. D. Blaine, was present and participated in that meeting. On that day the corporation was organized and a board of directors and other officers elected.

At that meeting appellant, Simpson, as shown by the minutes thereof, stated to the stockholders and incorporators there present about the drilling of the well and the mineral water it contained, and proposed to sell to the corporation his property, together with the machinery and equipment for operating the same, for the sum of $25,000, of which price $12,500 was to be paid in cash and the remainder of the purchase money payable in five years, with interest, to be secured by a purchase money lien. Whereupon the stockholders and incorporators there present authorized and directed the board of directors to purchase the property upon the terms named, provided the board should believe the property was of the value stated, and all those present voted for such resolution, including the appellee, A. D. Blaine; and the directors subsequently closed the deal.

Thereafter appellant conveyed the property to the corporation upon the terms named, reciting in the conveyance that he had received the cash payment of $12,-500; but it was agreed between appellant and appellee, A. D. Blaine, that as the latter did not have the ready money with which to pay for his $500 stock subscription, appellant would accept his note for $500 as a part of the cash payment of $12,500, and appellee, A. D. Blaine, gave his check for the $500 in stock, which appellant agreed to take care of and did take care of it at the bank; or, at any rate, the check so given by appellee, A. D. Blaine, was never paid but was returned to him, and he simultaneously executed to appellant, Simpson, his note for $500, payable in one year and bearing interest from date and the stock was thereafter issued to appellee, A. D. Blaine.

This is a suit on that note, filed by appellant against appellee, A. D. Blaine, and the appellee, Logan Blaine, who was the surety of A. D. Blaine thereon.

The defendants filed an answer in two paragraphs. In the first paragraph it is alleged, in substance, that the plaintiff had falsely and fraudulently represented to the defendants, in order to induce them to execute the note, that the corporation mentioned had been duly incorporated, with a paid-up capital stock of $25,000, and that the plaintiff had induced the defendants and others to subscribe for the stock so as to enable him to sell his property to the said corporation at an exorbitant price, and that the subscription was not made in good faith, because the plaintiff, at the time he took the note induced and procured the defendant, A. D. Blaine, to execute his check in payment for the stock in addition to the note so taken by plaintiff; that the plaintiff knew at the time that the check was not to be paid and that his check and the checks of others given at the time were given for the purpose of deceiving subscribers and inducing others to believe that the capital stock was paid in good faith; that the plaintiff induced the defendant to give the note and that thereafter the directors of the corporation bought from the plaintiff his property at the price of $25,000, and plaintiff acknowledged the payment of $12,500 of the purchase price when, in fact, no part of the same was paid; that the lien retained by the plaintiff on the property is largely more than the value of the property is or has ever been,

and that for these reasons there was no valuable consideration for the execution of the note.

In the second paragraph it is alleged, in substance, that at the time the plaintiff solicited the subscription from the defendant, A. D. Blaine, the latter notified the plaintiff that he was not in financial condition to subscribe or pay for the stock, and the plaintiff then and there, in order to induce him to execute the note, agreed with him that he (plaintiff) would not demand the payment of the note or require him to pay the same, and said that he wanted it and the check for the purpose of making it appear that the stock was subscribed and paid up, and that if the defendant did not want the stock that he would take it up and return to him the note, and that he, defendant, A. D. Blaine, relying upon such representations, executed and delivered the note.

By reply the material allegations of the answer were put in issue and the plaintiff affirmatively pleaded estoppel against the defendants. Demurrers were filed to the answer and overruled, and upon a trial a verdict was returned by the jury for the defendants, and the plaintiff's motion for a new trial having been overruled, he appeals.

On a trial it was admitted by appellee, A. D. Blaine, that he executed the note under the circumstances stated, and the note shows upon its face that it is an unqualified promise to pay money without reservation or exception. It is apparent that the plea of no consideration is not available to the appellees; that there was such good and valuable consideration is apparent from the admitted facts; appellee, A. D. Blaine, accepted $500 in stock of the corporation and executed in payment therefor his note for $500 to the appellant, Simpson, who accepted the same as a part of the cash payment recited in his conveyance to the corporation.

It will be observed that the corporation is not a party to this litigation, and the admitted facts show that the appellee, A. D. Blaine, was one of the incorporators, that he accepted this stock and paid for it by the execution of this note; that he was one of those interested from the beginning in the projected corporation; that he signed the articles of incorporation wherein it was stated that $13,500 of the capital stock had been subscribed; that he attended the stockholders' meeting and participated ac-

tively therein and was thoroughly familiar not only with all of the facts leading up to the organization of the corporation, but by reason of his professional knowledge he probably had better information than any of those present about the value of the mineral water proposed to be marketed, and it is therefore apparent that the defense attempted to be asserted in the first paragraph of the answer was not available.

Dr. Blaine's own evidence shows he was not deceived by any representations of appellant. He knew as much or more about the value of the property than did appellant. He knew all along it was to be sold to the corporation at the price named, and if there was any deceit or fraud practiced it was not upon Dr. Blaine.

It was undertaken to be shown on the trial by the parol evidence of the appellee, A. D. Blaine, and others, in substantiation of the defense relied upon in the second paragraph, that appellant had agreed that he would not exact the payment of the note when it became due at the end of twelve months if Dr. Blaine did not want the stock at that time, or that appellant would run the note for him as long as he wanted it.

To this evidence appellant objected, and the court, over the objection of appellant, permitted it to go to the jury.

It is the rule in this state that where by writing there is an unqualified promise to pay, parol evidence of contemporaneous declarations and agreements is not admissible to contradict the terms of the writing, unless the writing shows on its face that it is only a part of the contract between the parties. Tross v. Bills' Executrix, 189 Ky. 115, and authorities there cited.

The note in this case was an unqualified and unconditional promise to pay the money to appellant, and with this incompetent evidence eliminated the court should have sustained appellant's motion to direct a verdict for him.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.